**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **KADY DEESE, as surviving spouse and** ) <br> **as the administrator of the estate of** ) <br> **MATTHEW DEESE,** ) <br> ) <br>        **Plaintiffs,** ) <br> ) <br>        **v.** ) <br> ) <br> **Deputy RYAN POWELL, et al.,** ) <br> ) <br>        **Defendants.** ) <br> ) | **CIVIL ACTION NO. 5:24-CV-61 (MTT)** |

## ORDER

Kady Deese, as the surviving spouse and administrator of the estate of Matthew

Deese, brought this action against Deputy Ryan Powell and Corporal Andrew Gunn,

claiming they are liable for shooting and killing Mr. Deese on February 22, 2022.  Doc.

1.  The plaintiffs brought claims for excessive force under 42 U.S.C. § 1983 and battery

under Georgia law.  *Id.*  The defendants have moved for summary judgment.  Doc. 15.

For the following reasons, the defendants' motion for summary judgment (Doc. 15) is

**GRANTED** as to the plaintiffs' 42 U.S.C. § 1983 claim, and the plaintiffs' state law claim

is **DISMISSED without prejudice.**

## I. BACKGROUND[1]

On the morning of February 22, 2022, Mr. Deese left his home in Perry, Georgia,

and went to work at Robins Air Force Base.  Docs. 15-1 ¶ 3; 19-1 ¶ 3.  Mr. Deese

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the
non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

returned home at 3 p.m. Docs. 15-1 ¶ 4; 19-1 ¶ 4. Sometime between leaving work and arriving home, Mr. Deese was allegedly involved in a hit-and-run accident. Docs. 15-1 ¶ 8; 19-1 ¶ 8. When Mr. Deese arrived home, Ms. Deese was at the residence with her son and her sister. Doc. 15-1 ¶ 5; 19-1 ¶ 5. Mr. Deese went straight to his bedroom to sleep without mentioning the hit-and-run to Ms. Deese. Docs. 15-1 ¶ 6; 19-1 ¶ 6.

About an hour later, law enforcement officers arrived at the Deese residence to speak with Mr. Deese about the hit-and-run. Doc. 15-1 ¶ 7; Doc. 19-1 ¶ 7. Mr. Deese spoke to the officers, returned to his room, and went back to sleep. Docs. 15-1 ¶ 12, 19-1 ¶ 12. Later that day, Ms. Deese spoke with Mr. Deese about the law enforcement visit. Docs. 15-1 ¶ 13; 19-1 ¶ 13. During that conversation, Mr. Deese told Ms. Deese that "he was not going back to jail[.]" Docs. 15-1 ¶ 14; 19-1 ¶ 14. Mr. Deese then retrieved a weapon from his closet and began assembling the weapon while threatening to kill himself. Docs. 15-1 ¶ 15-16; 19-1 ¶ 15-16. 911 was called. Docs. 15-1 ¶ 23; 19-1 ¶ 23.

The Perry Police Department responded to the 911 call and spoke with Ms. Deese outside the house. Doc. 15-1 ¶ 25; 19-1 ¶ 25. Mr. Deese was still inside. Doc. 15-1 ¶ 26; 19-1 ¶ 26. While Ms. Deese spoke with the officers, she heard a gunshot from inside the house "that she believed came from [Mr.] Deese's pistol." Doc. 15-1 ¶ 26; 19-1 ¶ 26. A responding officer, Officer Chavers,[2] also heard the gunshot. Docs. 15-1 ¶ 27; 15-13 at 35:16-18; 19-1 ¶ 27. At that point, the responding officers

---

[2] Officer Chavers gave both a recorded interview and deposition testimony in this case. Docs. 15-13; 19-2. The deposition transcript mistakenly refers to her as "Chambers." Doc. 15-13. The Court will refer to her as Chavers.

dispatched Houston County's Special Response Team ("SRT") to the residence, informing them that there was a "suicidal subject with a gun."  Doc. 15-1 ¶ 29-30; 19-1 ¶ 29-30.

Between 12 and 15 members of the SRT responded to the scene, including Powell and Gunn.  Docs. 15-1 ¶ 33; 19-1 ¶ 33.  In an effort to de-escalate the situation, a negotiator spoke with Mr. Deese on the phone.  Docs. 15-1 ¶ 54; 19-1 ¶ 54.  An SRT officer testified that during negotiations, Mr. Deese was walking in and out of the residence holding a firearm.  Doc. 15-14 at 70:19-71:8.  Mr. Deese eventually told the negotiator he was going to surrender.  Doc. 15-1 ¶ 54; 19-1 ¶ 54.  At that point, there were two vehicles parked in the driveway, a white Lexus and a black vehicle.  Doc. 15-1 ¶ 49; 19-1 ¶ 59.  Mr. Deese came outside and positioned himself between the two vehicles with "his left hand on top of the White Lexus and a cellphone" in his right hand.  Docs. 15-1 ¶ 56; 19-1 ¶ 56.

The SRT Commander instructed four SRT members, including Gunn, to move toward Mr. Deese from the right side of the residence.  Docs. 15-1 ¶¶ 46, 57; 19-1 ¶¶ 46, 57.  Another group of SRT members, including Powell, positioned themselves by the bushes at the front left corner of the residence.  Docs. 15-1 ¶¶ 42, 46; 19-1 ¶¶ 42, 46.  As the SRT officers approached Deese, Officer John Harper testified that Mr. Deese "kneeled down and placed something in the driveway."  Doc. 15-8 ¶ 16.  According to Officer Harper, "[Mr.] Deese then stood up, but shortly after, [he] bent down and picked up an item off the driveway."[3]  Doc. 15-8 ¶ 16.  Lieutenant James Bo Spivey, who also

---

[3] The plaintiffs deny that Mr. Deese picked up his gun from the driveway.  Doc. 19-1 ¶ 87.  However, the plaintiffs do not cite any evidence to support their denial.  They cite only the testimony of Officer Chavers, who testified that she "could not see Mr. Deese."  Doc. 15-13 at 40:22.  Further, Chavers testified that she

witnessed the incident, testified that the "item" Mr. Deese picked up was his weapon. Doc. 15-14 at 74:16-19, 75:4-11.  Mr. Deese, still between the two vehicles, moved back toward the garage as SRT officers continued to approach him.  Doc. 15-8 ¶ 16. Mr. Deese initially placed his hands in the air.  Docs. 15-1 ¶ 68; 19-1 ¶ 68.  However, Gunn testified that as he came around the side of the residence, he saw Mr. Deese with his right arm fully extended and his firearm pointed at Gunn.[4]  Doc. 15-11 at 138:13-16. Gunn "moved toward the front of the White Lexus and fired a shot at [Mr.] Deese."  Doc. 15-11 at 151:9-11.  At that point, Powell observed Mr. Deese raise his firearm again, and Powell fired three shots at Mr. Deese.  Doc. 15-12 at 11-12, 83:9-84:6.  According to Powell, he fired his weapon at Mr. Deese because SRT officers were still moving around the vehicle to apprehend Mr. Deese, and Powell was concerned Mr. Deese "was trying to ambush" them.  *Id.* at 86:2-3.  Mr. Deese was fatally struck by at least one bullet.[5]  Docs. 15-1 ¶ 85; 19-1 ¶ 85.

Ms. Deese filed this action individually and on behalf of Mr. Deese's estate on February 20, 2024.  Doc. 1.  The plaintiffs assert two claims: (1) excessive force under 42 U.S.C. § 1983, and (2) battery under Georgia law.  *Id.*  On January 19, 2025, Gunn and Powell moved for summary judgment on both claims.  Doc. 15.  The defendants argue that they are entitled to summary judgment because qualified immunity bars the

---

believed Mr. Deese *did* pick his gun back up because she "heard metal scraping or a gun essentially scraping concrete."  *Id.* at 40:1-3.

[4] The plaintiffs dispute the following sequence of events.  Again, though, the plaintiffs cite no eyewitness testimony or any other evidence to contradict the officers' testimony regarding the shooting.

[5] The record does not reveal whether Gunn or Powell fired the fatal shot(s).

plaintiffs' federal law claim and official immunity bars the plaintiffs' state law claim.  Doc. 15-1.

## II.  STANDARD

### A.  Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the

movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## B. Qualified Immunity

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic …. the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority."  *Est. of Cummings v.*

*Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).[6]

To overcome a qualified immunity defense, the plaintiffs must show there is a genuine issue of material fact that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the new defendants violated law that was clearly established at the time of the alleged violation.  *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, the plaintiffs can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court or the Eleventh Circuit.  *Id*.  Second, the plaintiffs can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual

---

[6] The plaintiffs briefly argue that the defendants were not acting within their discretionary authority.  Doc. 19 at 6-7.  However, that argument relies on the plaintiffs' assertion that the defendants shot Mr. Deese while he was unarmed, an assertion of fact which, as will be discussed, has no support in the record.  The plaintiffs appear to conflate the distinct "question of whether the defendants acted lawfully with the question of whether they acted within the scope of their discretion."  *Sims v. Metro. Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992) ("The issues are distinct.").  Defendants need only demonstrate "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority."  *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (citation omitted).  The defendants have met that burden by providing evidence that they were required, as SRT members, to respond to the scene and that they acted under the direction of their commanding officer while at the scene.  Doc. 15-1 ¶ 30-36; 19-1 ¶ 30-36.

situation.  *Id*.  Third, the plaintiffs can show that the conduct is so egregiously
unconstitutional that prior case law is unnecessary.  *Id*.

### III. DISCUSSION

#### A. Section 1983 Excessive Force Claim

The defendants argue that they are entitled to qualified immunity because the
undisputed facts reveal that they acted in self-defense, and thus the plaintiffs cannot
establish a Fourth Amendment violation, and even if they could, they cite no clearly
established law that would have put the defendants on notice that their conduct was
unconstitutional.  Doc. 15-12 at 14-19.  The Court agrees.

"The Fourth Amendment protects against excessive force in the arrest context."
*Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (citing *Graham*, 490 U.S. at
396).  "An officer's use of force … violates the Fourth Amendment when it is *objectively
unreasonable* under the facts and circumstances of a specific case, 'judged from the
perspective of a reasonable officer on the scene, rather than with the 20/20 vision of
hindsight.'"  *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (emphasis
in original) (quoting *Graham*, 490 U.S. at 396).  "Further, the Supreme Court has
cautioned that '[t]he calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second judgments—in circumstances
that are tense, uncertain, and rapidly evolving—about the amount of force that is
necessary in a particular situation."  *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir.
2010) (quoting *Graham*, 490 U.S. at 396-97).  "'[W]here the officer has probable cause
to believe that the suspect poses a threat of serious physical harm, either to the officer

or to others,' use of deadly force does not violate the constitution." *Id.* at 851 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Here, uncontroverted testimony establishes that Powell and Gunn shot Mr. Deese because he brandished and aimed a firearm and they were concerned for the safety of themselves and others. Docs. 15-11 at 138:13-16; 15-12 at 11-12, 83:9-84:6. Based on the record, the defendants' use of deadly force was objectively reasonable and, thus, did not violate the Fourth Amendment.

The plaintiffs claim there is an issue of fact whether Mr. Deese was pointing a firearm at the defendants when he was shot. Doc. 19 at 6. As support, the plaintiffs cite the statements of Officer Chavers, who gave an interview in 2022 and was later deposed in 2024. *Id.* at 5. The plaintiffs state that Officer Chavers' 2022 interview, which they claim is Chavers' "most accurate" statement, provides evidence that Mr. Deese was not holding his firearm when he was shot. *Id.* However, Officer Chavers said the same thing in that interview as she said in her deposition—that she did not see Mr. Deese when he was shot and did not know if he had a gun at that point. Docs. 15-13 at 40:22 ("I could not see Mr. Deese."); 19-2 at 18:00-20:00. She further stated in both the 2022 interview and during her deposition that she heard a scraping noise and believed Mr. Deese had picked up his firearm just before he was shot. Docs. 15-13 at 40:1-3; 19-2 at 18:20. Neither of Officer Chavers' statements creates a genuine issue of material fact as to whether Mr. Deese was holding a firearm when he was shot.[7]

---

[7] The plaintiffs also argue that there is an issue of fact because of inconsistencies in the defendants' testimony. Doc. 19 at 5. However, the plaintiffs do not explain which portions of the defendants' testimony are inconsistent. And, as noted, Lieutenant Spivey testified unequivocally that Mr. Deese retrieved his gun from the driveway. 15-14 at 74:16-19, 75:4-11.

Accordingly, the defendants' motion for summary judgment is **GRANTED** on the plaintiffs' Fourth Amendment excessive force claim.

## B. State Law Battery Claim

That leaves the plaintiffs' state law claim for battery.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006).  In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in accordance with § 1367).  The Eleventh Circuit has recognized "that when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well." *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claim.

Accordingly, the plaintiffs' state law battery claim is **DISMISSED without prejudice.**

## IV. CONCLUSION

For the above reasons, the defendants' motion for summary judgment (Doc. 15) is **GRANTED** as to the plaintiffs' 42 U.S.C. § 1983 claim.  The Court declines to

exercise supplemental jurisdiction over the plaintiffs' state law claim, and that claim is

**DISMISSED without prejudice**.

      **SO ORDERED**, this 1st day of May, 2025.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT